[No. 11329. Department Two. December 20, 1913.]

G. L. SCHWARTZ, *Respondent*, v. NORTHERN PACIFIC RAILWAY COMPANY et al., *Appellants*.[1]

RAILROADS—CROSSING ACCIDENT—CONTRIBUTORY NEGLIGENCE—QUESTION FOR JURY. It is not contributory negligence as a matter of law, for the driver of a team, waiting at a double track crossing for a freight train to pass south on the near track, to start to cross immediately after the last car had passed, where it appears that, at the point where he was waiting, he had a view of the approach of north-bound trains for a distance of nearly 700 feet, and he looked and neither saw nor heard a train, and the city speed limit for trains at that point was six miles and hour, and he was struck by a train going at least 10 miles an hour, after getting his horses across the far track.

DAMAGES—PERSONAL INJURIES—EXCESSIVE VERDICT. A verdict for $3,000 for injuries sustained when struck by a passenger train at a crossing is not excessive, where plaintiff was rendered unconscious, his wrist broken and crushed, and his shoulder badly injured, and his injuries were permanent.

Appeal from a judgment of the superior court for Lewis county, Rice, J., entered December 16, 1912, upon the verdict of a jury rendered in favor of the plaintiff, in an action for personal injuries sustained at a railroad crossing. Affirmed.

*Geo. T. Reid, J. W. Quick*, and *L. B. da Ponte*, for appellants, contended, *inter alia*, that the plaintiff was guilty of contributory negligence. *Marty v. Chicago, St. P., M. & O. R. Co.*, 38 Minn. 108, 35 N. W. 670; *Fletcher v. Fitchburg*

[1]Reported in 137 Pac. 317.

*R. Co.*, 149 Mass. 127, 21 N. E. 302, 3 L. R. A. 743; *Daniels v. Staten Island Rapid Transit Co.*, 125 N. Y. 407, 26 N. E. 466; *Kraus v. Pennsylvania R. Co.*, 139 Pa. St. 272, 20 Atl. 993; *McCrory v. Chicago, M. & St. P. R. Co.*, 31 Fed. 531; *Stowell v. Erie R. Co.*, 98 Fed. 520; *Stueding v. Seattle Elec. Co.*, 71 Wash. 476, 128 Pac. 1058; *Bardshar v. Seattle Elec. Co.*, 72 Wash. 300, 130 Pac. 101.

*C. A. Studebaker* and *Forney & Ponder*, for respondent.

MOUNT, J.—The plaintiff recovered a judgment of $3,-000 for personal injuries received by him on the 14th day of March, 1912, when he was struck by a passenger train of the defendant Northern Pacific Railway Company, at the Prindle street crossing in Chehalis, Washington. The defendants have appealed from that judgment.

The assignments of error are that the court refused to instruct the jury to return a verdict in favor of the appellants, in overruling the motion of the appellants for judgment notwithstanding the verdict, and in overruling the appellants' motion for a new trial. These assignments of error are all based upon the same ground, namely, that the evidence was insufficient to sustain the verdict, and that it shows that the respondent was guilty of contributory negligence.

The facts are, in substance, as follows: The appellant Northern Pacific Railway Company maintains and operates a double track railroad through the city of Chehalis. These tracks as they pass through the city of Chehalis run nearly north and south. Trains going south use the west track; those going north use the east track. These tracks are crossed at right angles by certain streets, the one where the accident occurred being called Prindle street, which is two blocks south of the depot. This street is one of the principal streets of the city which crosses the railway tracks. To the south of Prindle street, a distance of about 322 feet, a water tank is located on the right of way of the railway

company. At the Prindle street crossing, the railway company maintained an electric bell which, when in repair, would be set ringing by a north-bound train when it was 2,734 feet south of the crossing. The respondent, at the time of the accident and for more than two years prior thereto, had lived on the corner of State and Prindle streets, which is about a block west of the railroad tracks. He had crossed the tracks at this crossing two or three times daily, and sometimes more. On the day of the accident, and for a period of about two weeks prior to that time, this crossing bell was out of repair and it rang constantly. The respondent had observed this fact.

On the day of the accident, the respondent, who was a teamster by occupation, hitched his team to his wagon, about half past one o'clock, and started to drive up town to haul a load of coal. As he approached the crossing on Prindle street from the west, a freight train consisting entirely of box cars was moving south across Prindle street. He stopped his team about forty or fifty feet from the track upon which the freight train was moving and about on the west line of the right of way of the railway company. He testified that the engine of the freight train was about to the water tank. There were three or four cars yet to cross the street. He noticed that the gong or crossing bell was ringing, and he looked down the track toward the south to see if there was any train on the east track. He testified that he could see beyond the water tank down to Main street, a distance of about 698 feet, but there was no train in sight. The freight train obstructed his view of any other train that would be coming north behind the freight train. He also testified that, at the point where he looked, he had a better view than at any other point. About the time the last car of the freight train was crossing Prindle street, he started his team to drive over the crossing of the railway. As he emerged from behind the freight train, and as his team was upon the east track, he looked south and saw a passenger

train coming. It was then too late for him to back his team off the track. He urged it forward and was struck by the engine of the passenger train and severely injured. The horses escaped injury. The wagon was demolished. He himself was rendered unconscious.

An ordinance of the city of Chehalis makes it unlawful for a railway train to pass over this street at a faster rate of speed than six miles per hour. It is apparently conceded that the train at that point was running at least ten miles per hour. There is evidence to the effect that it was running between twenty-five and forty miles per hour at the time it struck the respondent. It was a regular passenger train and was due at the station at one o'clock and thirty-two minutes. It was about eight minutes late upon this occasion. There was also evidence to the effect that the whistle was not blown nor the bell rang upon the engine of the passenger train. At any rate, the respondent testified that he did not hear the bell or the whistle.

The appellants strenuously argue that the respondent was guilty of contributory negligence in attempting to make the crossing over Prindle street immediately after the freight train had passed. A number of cases are cited to the effect that "where a highway crosses a double-track railway, over which trains are liable to run frequently in opposite directions, it is contributory negligence for a traveler thereon, whose view of the second track is obstructed by the presence of a passing train on the track nearest to him, to pass immediately upon the crossing as soon as the way is clear, without waiting to look or listen for the approach of a train in the opposite direction on the second track." *Marty v. Chicago, St. P., M. & O. R. Co.*, 38 Minn. 108, 35 N. W. 670; and other cases to the same effect. The appellants seek to distinguish this case from the case of *Merwin v. Northern Pac. R. Co.*, 68 Wash. 617, 123 Pac. 1019, by reason of the fact that, in the case just cited, Merwin, at the time he reached the crossing, saw the Carbonado train approaching

which in no manner obstructed his view toward the north, the direction from which the train came which struck him and when Merwin stopped, just before the Carbonado train passed over the crossing, he looked to the east along the track and could see for a distance of from 1,500 to 2,000 feet and would have been able to see a train approaching from the east upon any of the tracks if a train had been within that distance of him, while, in this case, the freight train obstructed the respondent's view of the train upon the north-bound track which might have come from behind the freight train at any time before he went upon the tracks. But as we read the evidence of the respondent and of some of the other witnesses, it is to the effect that, at the place where the respondent stopped, he had a view of the approach of the north-bound train for a distance of nearly 700 feet; that he looked to see if any train was approaching from that direction while he had stopped, and immediately prior to passing upon the tracks, and saw and heard no train.

It is true that the gong was ringing which, if it had been in repair, would have notified the respondent that a train was approaching upon that track. But this gong, according to the evidence, and had been out of repair for two weeks; and upon the day of the accident and for two weeks prior thereto, had been constantly ringing, and the respondent knew of this fact. This bell, therefore, meant nothing to the respondent, because it is conceded that, when the bell was out of repair, it rang constantly, for, as appellants say, it erred on the side of safety. This no doubt would have been true if the respondent had not known that the bell was out of repair and continued to ring whether a train was approaching or not. Before he started to cross the tracks, he stopped, looked and listened, at a point which the evidence shows was the most advantageous point at which he might do so. He saw and heard no train approaching, though he had a view of about 700 feet to the south. It is true this view was obstructed somewhat by a water tank and by the

freight train which had just passed south.   We are satis-
fied that, under these facts, the question of contributory neg-
ligence was one for the jury and not a question of law for
the court.   This case, we think, falls within the rule of the
*Merwin* case, *supra*, and is controlled by it.   It was therefore
not error for the trial court to submit to the jury the ques-
tion whether or not the respondent was guilty of contribu-
tory negligence.

The appellants contend that the verdict is excessive.   The
respondent was badly injured.   He was rendered unconscious
at the time of the accident; his wrist was broken and the
bones of his wrist were crushed; his shoulder was badly in-
jured.   Evidence was introduced at the trial to show that
the injury to the wrist would be permanent.   We think,
under the circumstances, that a verdict for $3,000 is not so
excessive as to warrant a reduction thereof.

The judgment is therefore affirmed.

CROW, C. J., PARKER, and FULLERTON, JJ., concur.